IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tyrice Hill,                                    Case No. 3:17 CV 825

               Plaintiff,               MEMORANDUM OPINION
                                                AND ORDER
    -vs-
                                                JUDGE JACK ZOUHARY
Kimberly Henderson, et al.,

               Defendants.

## INTRODUCTION

Plaintiff *pro se* Tyrice Hill filed a Complaint under 42 U.S.C. § 1983 against Toledo Correctional Institution ("TCI") Deputy Warden of Special Services Kimberly Henderson, TCI Librarian Rose Shaddy, and TCI Institutional Inspector Dereic Burkhart. Hill alleges Defendants denied him access to the courts, retaliated against him, and subjected him to cruel and unusual punishment by limiting his library time and removing him from the law library. He seeks monetary damages and injunctive relief (Docs. 1, 3).

## BACKGROUND

According to Hill, inmates at TCI are limited to four and a half hours in the law library each week. They are assigned specific library times according to their housing units, and Hill contends he does not get enough time because his unit's assignment sometimes conflicts with religious services, visitation, or recreation. He believes he should not have to choose between using the library and enjoying those other activities.

He further complains that the law library's books are inadequate and that its staff is not trained in legal matters. He alleges the librarian, Shaddy, harassed him and removed him from the law library on February 25, 2017, claiming he was not permitted to be there during that time. Hill believes he was permitted to be there, and he filed an informal complaint to Shaddy's supervisor, Henderson. Hill alleges Shaddy then retaliated against him by issuing a "false conduct report." This pattern repeated itself a few days later, when Shaddy again removed Hill from the library and issued a conduct report. Hill filed another informal complaint and, unsatisfied with Henderson's response to his prior complaint (which agreed with Shaddy), Hill filed a formal grievance to Burkhart.

According to Hill, Shaddy then retaliated by filing an additional conduct report, this time accusing him of inappropriately touching himself in the library (Doc. 1 at ¶ 17; Doc. 3-1 at 8). Hill was eventually found "not guilty" of that charge, with the Rules Infraction Board finding Hill's account of the events truthful (Doc. 3-1 at 11). Hill does not explain the outcome of the other conduct reports Shaddy allegedly filed against him.

Before the Rules Infraction Board ruled in Hill's favor on the sexual misconduct charge, Hill filed another informal complaint to Henderson, complaining about the false sexual misconduct allegation. He also filed another formal grievance to Burkart, accusing Shaddy of retaliation. Burkhart denied Hill's pending grievances, and Hill appealed to the Chief Inspector. The result of those appeals is unclear.

With respect to the harm Hill has allegedly suffered because of Defendants' conduct, he states: "Plaintiff has been denied access to the courts for years, and even now as he has pending issues within the courts. The actions by Defendants have increase[d] my criminal sentence that has been illegal since being initially confined" (Doc. 1 at ¶ 5). His affidavit, submitted with the Complaint, further states that his motion to obtain a transcript of a resentencing hearing in criminal

2

case CR-04-2741 was denied because he "did not have the time to do the legal research need[ed] to make a[n] argument to the State[']s opposition" (Doc. 1-4 at ¶ 3). This transcript was necessary, according to Hill, to appeal his resentencing, which "has never been subject to the rigors of judicial review necessary to ensure the correctness of [his] conviction" (*id.*). No further specifics were provided.

## STANDARD FOR DISMISSAL

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But a district court must dismiss an action under 28 U.S.C. § 1915(e) if the Complaint either fails to state a claim on which relief may be granted or lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989). In making that determination, this Court must construe the Complaint in the light most favorable to Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when a Complaint contains "factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

Hill does not allege that either Henderson or Burkhart personally participated in removing him from the law library. Rather, his claim against Henderson appears to be based on her denying his grievances and her involvement in running the law library (which he claims provides inadequate access). His claims against Burkhart appear to be based solely on the denial of his grievances. Denying grievances, however, is not a basis for liability under Section 1983. *See Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999). Thus, Hill's claim against Burkhart must be dismissed, and his claim against Henderson can only succeed if he shows her conduct denied him access to the courts.

3

**Access to the Courts**

To state a claim for inadequate access to the courts, Hill must allege particular actions of Defendants that either prevented him from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas petition, or civil rights action. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The right of access to the courts is directly related to an "underlying claim, without which a Plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, Hill must demonstrate "actual injury" by showing his underlying claim was non-frivolous and that it was frustrated or impeded by Defendants. *Lewis*, 518 U.S. at 353. "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the Complaint . . . ." *Christopher*, 536 U.S. at 415. This means that the "non-frivolous" underlying claim, and its remedy, "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Hill fails to state a claim for inadequate access to the courts. He claims he has pending cases in different courts, but he does not state what kind of cases they are, or what particular pleadings, motions, or arguments Defendants have prevented him from asserting in those cases. Indeed, the only specific information he provides regarding an affected case is that he was prevented from adequately researching a reply to the State's opposition to his motion to obtain a transcript of his resentencing hearing. But he provides no details suggesting the motion was denied because a non-frivolous argument was not offered in reply, much less because of inadequate access to the law library. Moreover, Hill provides no details demonstrating that his underlying claim (presumably a direct appeal of his resentencing) was non-frivolous.

In short, Hill provides no facts plausibly suggesting inadequate access to the law library caused him concrete harm. Rather, he makes only a conclusory allegation that "[t]he actions by

4

Defendants have increase[d] [his] criminal sentence" (Doc. 1 at ¶ 5). Because Hill has pleaded no facts plausibly suggesting actual injury, his claim for denial of access to the courts must be dismissed.

**Cruel and Unusual Punishment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment protects inmates by requiring that "prison officials . . . ensure . . . inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). In sum, the Eighth Amendment affords only a baseline protection against conditions of confinement that constitute health and safety threats; it does not address those conditions that merely cause the prisoner discomfort, aggravation, or annoyance. *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992) (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), outlined the framework for deciding whether certain conditions of confinement constitute cruel and unusual punishment. First, a plaintiff must plead facts which, if true, establish a sufficiently serious deprivation. *Id.* Seriousness is measured in response to "contemporary standards of decency." *McMillian*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. Second, a plaintiff must establish a subjective element showing that prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id*. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer*, 511 U.S. at 834.

Hill's allegations do not describe any objectively serious condition of confinement. He alleges he must sometimes choose between using the law library and participating in religious services, visitation, or recreation. And he claims he was removed from the law library on a few occasions -- although it is unclear whether he was authorized to be in the library at the time. In any event, he describes mere inconveniences and annoyances of prison life; he makes no allegations involving a threat to his immediate health or safety that would rise to the level of an Eighth Amendment violation. Accordingly, Hill's Eighth Amendment claim must be dismissed.

**Retaliation**

To state a *prima facie* case for retaliation prohibited by the First Amendment, Plaintiff must establish: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was at least partially motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Hill alleges that, when Shaddy learned of his informal complaints and grievances against her, she retaliated by filing false conduct reports and removing him from the law library. The first informal complaint he mentions (attached to his pleadings) is dated February 27, 2017. It alleges Shaddy filed "false reports" against him and "imped[ed his] access to courts by incessant harassment and/or annoyance when [he] regularly tried to use the law library." According to the Complaint, however, Shaddy first removed him from the law library on February 25, 2017 -- two days before his first informal complaint. Thus, it appears Shaddy may have issued conduct reports and prevented

him from accessing the library *before* he started filing grievances, contradicting his claim that Shaddy's conduct was motivated by the filing of grievances.

Nevertheless, it appears Shaddy issued a sexual misconduct report within days of Hill's first formal grievance. The Rules Infractions Board found him "not guilty" of that charge, stating that Hill's account was "truthful." Further, in his informal complaint to Henderson, Hill alleges other prisoners reported overhearing Shaddy laughing and discussing with another officer how she was going to write Hill up for a "false conduct report" under "rule 14" (sexual misconduct).

A First Amendment claim can be based on a false conduct report issued in retaliation for a grievance. *See Thomas v. Eby*, 481 F.3d 434, 440–42 (6th Cir. 2007); *Scott v. Churchill*, 377 F.3d 565, 570–71 (6th Cir. 2004). But grievances only qualify as protected conduct under the First Amendment if they are not frivolous. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The formal grievance for which Shaddy allegedly retaliated by issuing the sexual misconduct report generally advances the same arguments Hill asserts in this action -- that is, he argued: (1) the allotted four and a half hours of library time (plus an extra three hours available on request) falls short of the ten to twelve hours purportedly required by the Constitution; (2) the prison should be required to provide staff trained in law; (3) he should not be forced to choose between using the library and participating in other activities; and (4) Shaddy harassed him.

This Court does not have enough information to determine whether his allegations of harassment against Shaddy are frivolous, but his other complaints lack merit for the reasons discussed above. *See also Lewis*, 518 U.S. at 351 ("Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in

some theoretical sense."); *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (holding that the Constitution requires adequate law libraries *or* adequate assistance from persons trained in the law, but not both); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985) ("We are concerned with a right of access *to the courts*, not necessarily to a prison law library. . . . [T]he inmates claim a general constitutional right to some minimum amount of time in the prison law library. We doubt that this constitutional claim is substantiated under the *Bounds* rationale."); *Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 497 (S.D.N.Y. 2014) (holding that similar scheduling conflicts, especially in the absence of actual harm "do not rise to the level of unconstitutional obstruction of access to courts"). Because this Court cannot determine -- based on this record -- that Hill's allegations of harassment were frivolous, or that his grievances alleging such harassment played no role in Shaddy's issuing a false conduct report against him, Hill's retaliation claim survives an initial screening under 28 U.S.C. § 1915(e).

This does not mean, however, that Hill has satisfied the exhaustion requirements of 42 U.S.C. § 1997e. Based on this record, this Court has serious doubts about whether Hill properly grieved his retaliation claim at each stage of the required process. Indeed, it appears based on the documents atttached to Hill's pleadings that he did not specifically allege in a formal grievance that Shaddy retaliated against him by filing a false sexual misconduct charge. Moreover, Hill alleges that his grievance appeals were pending when he filed suit (*see, e.g.*, Doc. 1 at ¶ 20).

Failure to exhaust, however, is an affirmative defense, and a district court should not *sua sponte* dismiss an action on that basis unless the failure to exhaust is "obvious from the face of the complaint." *See Barnett v. Laurel Cty., Ky.*, 2017 WL 3402075, at *1 (6th Cir. 2017). This Court cannot conclude -- based on this record -- that Hill filed no other grievances alleging a constitutional claim for retaliation based on the false sexual misconduct charge. Nor can it determine whether Hill properly appealed any such issue before filing the Complaint. Because the Complaint does not

provide enough facts regarding the complete procedural history of Hill's administrative grievances, *sua sponte* dismissal would be inappropriate at this stage of the proceedings.

**Injunctive Relief**

In deciding whether to issue a preliminary injunction or temporary restraining order, a court must consider: (1) whether the movant shows a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Hill's request for injunctive relief (Doc. 3) asks this Court to order that Defendants give him greater access to the law library.

As discussed above, Hill has not stated a claim for inadequate access to the courts. Nor has he demonstrated a concrete or irreparable harm that will result from inadequate access to the prison's library. As such, his request for injunctive relief fails. *See Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal" to a request for injunctive relief).

Further, although this Court finds that Hill's retaliation claim survives an initial screening under 28 U.S.C. § 1915(e), it does not find that Hill has established "a strong likelihood of success on the merits." Nor has Hill pleaded facts suggesting he will suffer irreparable harm from Shaddy's alleged retaliatory conduct. Indeed, he acknowledges he was found "not guilty" of at least one of the alleged false conduct charges, and he has offered no facts demonstrating any harm he has suffered (or will suffer) because of Shaddy's retaliation. Thus, a TRO against Shaddy is not warranted.

**CONCLUSION**

Hill's access-to-the-courts and Eighth Amendment claims are dismissed under 28 U.S.C. § 1915(e). His claims against Henderson and Burkhart are also dismissed, and his Motion for Temporary Restraining Order (Doc. 3) is denied. At this point, Hill may proceed with his retaliation claim against Shaddy, but this Court is concurrently filing an Order requiring TCI to provide complete records of Hill's grievances from the relevant time period, so it may determine whether Hill properly exhausted his administrative remedies before filing this lawsuit.

IT IS SO ORDERED.

                                                          s/ *Jack Zouhary*
                                                    JACK ZOUHARY
                                                    U. S. DISTRICT JUDGE

                                                    September 21, 2017